IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES M. LANIER,** | ) CIV F 09-1779 AWI SKO |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) AND ORDER GRANTING IN |
| | ) PART AND DENYING IN |
| **FRESNO UNIFIED SCHOOL** | ) PART DEFENDANT'S |
| **DISTRICT,** | ) MOTION TO DISMISS |
| | ) PLAINTIFF'S FIRST |
| Defendants. | ) AMENDED COMPLAINT |
| | ) |
| | ) **Document # 35** |

This is a civil rights action for damages by *pro se* plaintiff James M. Lanier ("Plaintiff") against defendant Fresno Unified School District ("Fresno Unified"). This action arises out of Plaintiff's repeated attempts to obtain a contract from Fresno Unified for sports officiating that Plaintiff alleges were unsuccessful because of racially discriminatory practices. On June 10, 2011, the court filed a memorandum opinion and order dismissing the original complaint with leave to amend (hereinafter, the "June 10 Order"). The now operative First Amended Complaint ("FAC") was filed on July 1, 2011 and names Fresno Unified as the sole defendant in this action. In the instant motion, Fresno Unified seeks to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

This is the third action by Plaintiff in this court that alleges racially discriminatory attitudes and conduct by school officials prevented him from equal access to sports officiating

contracts over a period of several years.  Plaintiff's FAC alleges a total of eight claims for relief against Fresno Unified.  In order of allegation, Plaintiff's FAC alleges claims for discrimination pursuant to: (1) 42 U.S.C. § 1981, (2) 42 U.S.C. § 1983, (3) 42 U.S.C. § 1985, (4) 42 U.S.C. § 1986, (4) 42 U.S.C. § 2000d, (6) California Public Contract Code §§ 100 - 102, (7) California Business and Professions Code § 17200, (8) Negligence under California common law.

In its June 10 Order, the court dismissed Plaintiff's claims against a number of individual defendants because evidence that the individual defendants had been properly served was lacking.  The FAC, in addition to narrowing the field of defendant to Fresno Unified, substantially recast a number of Plaintiff's factual allegations.  As the court observed with regard to the original complaint, the two-year statute of limitations applicable to civil rights claims generally limited Plaintiff's claims to those that accrued after October 8, 2007.  Perhaps in response, Plaintiff's FAC puts more focus on events that are alleged to have occurred after that date and marks the accrual of Plaintiff's civil rights claims in April of 2008.  The court has reviewed the facts alleged and finds that the FAC alleges a single instance of conduct that could be described as discriminatory and that occurred after October 8, 2007.  That instance of conduct is expressed in a fairly lengthy narrative which is quoted as follows.

l.  April 2008: [Plaintiff, dba Sports Officials Association ("SOA")] attended a meeting with Ronald Haroldsen (white) about a business proposal for a joint officiating venture between the newly formed California Sports Officials Association (COSA), SportsTime Officials Association (SOA) and the Central California Soccer Officials Association (CCSOA [owned by Ruby Earl, an African-American woman]).  The meeting entailed coming together to form a coalition of officials' associations to present a proposal to [Fresno Unified] and the Clovis Unified School District for the upcoming sports officiating services contracts. [Plaintiff] and Ms. Earl had no idea at the time that this was the brainchild of [Fresno Unified] athletic directors to prevent [Plaintiff] from filing discrimination and civil rights violations claims.

m.  May 2008 [Fresno Unified] announces that it is putting the officiating services contract out to bid for all of the districts school sports – high school, middle and elementary schools. [Fresno Unified] assembled a 10-person panel to vote on the bid proposals.  Doug Semmen [Fresno Unified athletic director] informs us – Ruby Earl, [Plaintiff], Kemron Brooks (all Black) – that [Fresno Unified] needed for SOA and CCSOA to work with the newly formed CSOA (white contractor) in order to "justify" removing the contract from SJVOA. This is when the distrust and lack of confidence in an Afro American being able to handle the responsibility of the job overtly surfaced. [Plaintiff] and Earl were both more qualified than Ronald Haroldsen of CSOA to perform sports

   officiating contract work for [Fresno Unified].

n.  May 2008: [Plaintiff]/SOA submits a bid proposal for the 2008-2009 for the [Fresno Unified/County Metro Athletic Conference/North Yosemite League] sports "all sports" officiating services contracts for approval. SOA was the lowest responsible bidder for services with the new programs that SOA would be introducing, and it was most qualified of all bidders submitting proposals.

   SOA also sent a letter to the [Fresno Unified] purchasing department director Paul Rosecrans inquiring as to the independent contractor status of all officials and whether SOA could utilize the entire pool of officials. Paul Rosencrans (white) informed [Plaintiff] and SOA that they could not utilize the pool of independent contracted officials but were limited to SOA's current roster of officials. The white contractor awarded the bid for that time frame was allowed to utilize the entire pool of officials in both his bid proposal, and in the performance of the contract to the 2008-2009 contract period.

o.  June 2008: SOA submits a letter of protest to [Fresno Unified] after discovering that the 10-person panel selected to vote on the bid for the [Fresno Unified] 2008-2008 officiating services contract included 7 of the 10 people who were in attendance at the previous 5 CMAC/NYL Athletic Director's [sic] meetings and had previously voted against SOA receiving the contracts 5 times. Plaintiff also discovered that Ronald Haroldsen/COSA (white contractor) was allowed to use the entire independent contractor officials pool in his bid while [Plaintiff] and SOA were prohibited from using this same pool in submitting a bid proposal.

p.  June 2008: Additional meetings between SOA, CSOA, and CCSOA representatives regarding bid proposals and further structuring of the newly formed CSOA association took place in June 2008. Again, Doug Semmen (white), [Fresno Unified] athletic director, emphasized that this coalition of companies was the only way [Plaintiff] and SOA would be awarded any contract work (i.e. as a support group to a white contractor). Semmen also indicated that this merging of groups was required by the school districts' (including Fresno Unified's) approval (to help staff the white contractor who had no staff).

q.  July 1, 2008: [Fresno Unified] awards the 2008-2009 sports officiating services contract to Ron Haroldsen (white contractor) who only had the available services of SOA/[Plaintiff] (black) and CCSOA/Ruby Earl (black) to work for him in proformance of his new [Fresno Unified] contract. [Fresno Unified] exhibited race discrimination against African-Americans in the bidding and awarding of the aforesaid sports officiating services contract.

Doc. # 33 at 6-8.

  The instant motion to dismiss Plaintiff's FAC was filed on July 18, 2011. Plaintiff's opposition was filed on August 15, 2011, and Fresno Unified's reply was filed on August 22, 2011. Hearing on the motion to dismiss was vacated by order of the court on August 22, 2011, and the matter was taken under submission.

**LEGAL STANDARD**

Although Fresno Unified has moved to dismiss each of Plaintiff's claims for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it is apparent from Fresno Unified's pleadings that their motion to dismiss challenges the jurisdiction of the court with regard to those claims to which Fresno Unified contends it has Eleventh Amendment immunity. Because Fresno Unified's contentions regarding Eleventh Amendment immunity are jurisdictional in nature, the court will construe the motion to dismiss as being pursuant to Rule 12(b)(1) where it is claimed that Eleventh Amendment immunity applies.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v. Sullivan, 719 F. Supp. 899, 903 (E.D. Cal.1989), rev'd on other grounds, 963 F. 2d 229 (9th Cir.1992).

A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings. Mortensen, 549 F. 2d at 891. In such a case, the court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. St. Clair v. City of Chico, 880 F. 2d 199, 201 (9th Cir.1989); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.1987);

Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publishing, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at

5

1950).

## DISCUSSION

**I. Plaintiff's Claims Pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 – Sovereign Immunity**

Fresno Unified contends that it is an arm of the state and therefore has immunity under the Eleventh Amendment from Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986. Fresno unified is correct in this contention.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state or by Citizens or Subjects of any foreign state." The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or citizens of other states. Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir.1991). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Although the exact limits of the Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent." Belanger v. Madera Unified School Dist., 963 F.2d 248, 250 (9th Cir. 1992). In Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1988), the Ninth Circuit set out a five-factor test to determine whether an agency is a state agency for Eleventh Amendment purposes. That analysis need not be repeated here because the Ninth Circuit has repeatedly held that, because of the funding relationship that exists between California schools and the State of California, public school districts and their subdivisions are, in fact, state agencies for Eleventh Amendment purposes. See, e.g., id.; Belanger, 963 F.2d at 254-255; Jackson v. Hayakawa, 682 F.2d 1344, 1350-1351 (9th Cir. 1982) ("trustees are an arm of the state that can claim Eleventh Amendment Immunity).

The next question is whether Congress, in enacting 42 U.S.C. §§ 1981, 1983, 1985 or

1986 specifically abrogated Eleventh Amendment immunity.  The Supreme Court has held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." Kentucky v. Graham, 473 U.S. 159, 169 n.17 (1985).  Although California could, in theory, abrogate its own Eleventh Amendment immunity for purposes of suits pursuant to § 1983, it has not done so. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding California Constitution does not waive immunity from federal court jurisdiction); Dittman v. State of California, 191 F.3d 1020, 1025-1026 (9th Cir. 1999).  The Ninth Circuit has applied Eleventh Amendment immunity in a similar manner to claims against state agencies pursuant to 42 U.S.C. §§ 1981 and 1985.  See Mitchell v. Los Angeles Comty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1989); see also, Cerrato v. San Francisco Comty. Coll. Dist., 26 F.3d 968, 975 (9th Cir, 1994) (Eleventh Amendment immunity bars claims against agency pursuant to §§ 1985 and 1986).

        The court concludes Eleventh Amendment immunity bars Plaintiff's claims against Fresno Unified pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

**II.  Plaintiff's Title VI Claim**

        Plaintiff's fifth claim for relief alleges violation of Title VI, 42 U.S.C. § 2000d, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."  Congress has abrogated States' sovereign immunity for "violations [of Title VI] that occur in whole or in part after October 21, 1986."  42 U.S.C. § 2000d-7(b) (Supp.1987).  "The two elements for establishing a cause of action pursuant to Title VI are (1) that the entity involved is engaging in racial or national origin discrimination and (2) the entity involved is receiving federal financial assistance."  Jackson v. Conway, 746 F.Supp. 896, 903 (E.D. Missouri 1979).  For purposes of the instant motion to dismiss, Plaintiff may satisfy the first element by alleging discriminatory effect; discriminatory intent need not be shown.  Id.  Plaintiff alleges that Fresno Unified is a

recipient of federal funds and Fresno Unified does not dispute the assertion. The court will therefore assume for purposes of this analysis that the second element is satisfied.

While a claim pursuant to Title VI cannot be alleged against an individual since an individual is not the recipient of federal funds, Goonewardena v. New York, 475 F.Supp.2d 310, 328 (S.D. N.Y. 2007); liability under Title VI "cannot be imputed to institutions based on the actions of their employees." Id. (citing Gebser v. Lago Vista Independent Sch. Dist., 524 U.S. 274, 287-288 (1988)). Fresno Unified urges the court dismiss Plaintiff's Title VI claim on the ground the FAC alleges discriminatory behavior against individual employees without adequately alleging discriminatory conduct by Fresno Unified.[1] It is important to note that Fresno Unified's challenge to Plaintiff's Title VI claim is based on an alleged failure to connect the discriminatory conduct to the entity receiving federal funds, not on the sufficiency of Plaintiff's allegation of the discriminatory conduct itself. Therefore, the sufficiency of Plaintiff's claim for purposes of Fresno Unified's challenge rests on the question of whether Plaintiff's allegation of discriminatory conduct was aimed high enough in Fresno Unified's managerial hierarchy to constitute an allegation of discrimination against the entity receiving federal funds.

In Gebser, the Supreme Court addressed the standard required to state a claim for money damages under Title IX. The Supreme Court held:

> [A] damages remedy will not lie under Title IX unless an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond. ¶ We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.

Gebser, 524 U.S. at 290.

---

[1] Fresno Unified also contends that Plaintiff is time-barred from alleging claims for relief that accrued prior to October 8 , 2007. The court has pointed out the time limitations imposed on Plaintiffs claims. The analysis presented here considers only the single event that is alleged to have occurred in 2008.

8

The Supreme Court, as well as the Ninth Circuit, have recognized that the language of Title IX is patterned on the language of Title VI, substituting only discrimination based on gender for discrimination based on race or national origin. For this reason, these courts have applied standards applicable to Title IX cases to Title VI cases for most purposes. See Grove City College v. Bell, 465 U.S. 555, 653 - 570 (1984); Radcliff v. Landau, 883 F.2d 1481, 1483 (9th Cir. 1989). To the extent there is any room to argue what standard is applicable in a Title VI claim, the court is confident it does not apply too liberal a standard by employing the deliberate indifference standard set forth in Gebser.

The standard articulated in Gebser is vague, perhaps deliberately so, as to the level of administrative authority at which the "authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf" resides. In the instant case, Plaintiff's FAC alleges two instances where Plaintiff's allegations of discriminatory practice reach the level of an official with authority. First, Plaintiff alleges that Doug Semmen, who is alleged to have been Fresno Unified's athletic director during the relevant time period, informed the African-American sports officiating bidders that they could not be considered a replacement for the existing all sports officiating organization unless they partner with a "White" contractor with no staff and no certification to officiate. Plaintiff alleges he issued a letter of protest in June 2008, and that Semmen thereafter reiterated that Plaintiff's officiating company would not be offered any contract work except and unless it partner with what Plaintiff alleges is an unqualified White contractor. Since Semmen had authority, and presumably the duty, to submit a preferred selection from the bidding process directly to the Fresno Unified Board of Supervisors, the court can reasonably presume that Semmen had the authority to address Plaintiff's allegations of bias and racially discriminatory bid-rigging in the bidding process.

Second, Plaintiff sent his June 2008 letter of protest to "FUSD." Construing the FAC liberally in favor of Plaintiff, as the court must, it is reasonable to assume the letter of protest went to an "official" within the meaning of the standard set in Gebser, if not to the Fresno

9

1 Unified Board of Education.  While the FAC is somewhat vague as to what the June 2008 letter
2 of protest actually alleged, it is at least sufficient to put Fresno Unified "officials" on notice of
3 claims of discriminatory treatment on account of race.  See FAC at ¶ o (alleging the letter of
4 protest complained of unequal treatment between the "White" contractor, Haroldsen, and
5 Plaintiff with regard to the ability to use the entire independent contractor pool in submitting a
6 bid proposal.)

7      As previously noted, Fresno Unified's challenge is aimed at the issue of whether or not
8 Plaintiff's FAC adequately connects the allegations of discriminatory practice at Fresno Unified
9 as an entity, rather than at the its individual employees.  When considering a motion to dismiss,
10 the court is required to construe the pleading in the light most favorable to the opposing party
11 and to resolve factual disputes in the pleader's favor.  Jenkins, 395 U.S. at 421.  Significantly,
12 Plaintiff's FAC does not use the term "vicariously liable."  Rather, the FAC is explicit in its
13 allegation that the decisions regarding Plaintiff's bid for the 2008 all sports officiating contract
14 was directed to a Fresno Unified departmental director, Semmen, and to a body that was
15 specifically empowered by Fresno Unified to make decisions regarding the award of the
16 contract.  Plaintiff has also alleged facts that strongly suggest, if not directly state, that Fresno
17 Unified was aware of Plaintiff's allegations of racial bias in the determination of successful
18 bidders in sports officiating contract proposals based at least on the letter of protest.  In
19 construing Plaintiff's FAC in the light most favorable to Plaintiff, the court finds that Plaintiff
20 has adequately pled a claim for violation of Title VI against defendant Fresno Unified to the
21 extent necessary to defeat Fresno Unified's motion to dismiss.

22      To the extent there is a question as to the adequacy of Plaintiff's allegation of the
23 discriminatory conduct itself, the court has previously noted that in order to show a *prima facie*
24 case of discrimination in the context of a commercial contract, the plaintiff must show (1) he or
25 she was a member of a protected class; (2) the plaintiff attempted to contract for certain
26 services; and (3) the plaintiff was denied the right to contract for those services.  Lindsey v.

28      10

SLT Los Angeles, LLC., 447 F.3d 1138, 1145 (9th Cir. 2006); Ahmed v. Mid-Columbia Med. Ctr., 673 F.Supp.2d 1194, 1205 (D. Or. 2009).  While Plaintiff's FAC is still not a model of clarity and conciseness, it has, nonetheless, been improved over the original complaint so that facts are now discernable that explain how Plaintiff was informed by Fresno Unified that the right to contract would be denied unless Plaintiff partnered with a "White," but otherwise unqualified contractor.  Plaintiff has alleged, in short, that limitations were placed on his right to seek a contract that were not placed on other similarly qualified non-African American potential contractors and that the limitations were imposed because of Plaintiff's race.  The court finds that based on the allegations made, Plaintiff has adequately alleged discriminatory conduct that would be remediable under Title VI.

Fresno Unified's motion to dismiss Plaintiff's fifth claim for relief pursuant to Rule 12(b)(6) will be denied.

**III.  Plaintiff's State Law Claims**

Plaintiff's sixth, seventh and eighth claims for relief allege claims under California law for violation of California Public Contract Code, violation of California Business and Professions Code and for negligence under California common law, respectively.  As the court has previously explained, Fresno Unified, like all public school districts in California, has been held an arm of the state and therefore shielded from suit in federal court under the Eleventh Amendment.  As a court of the Northern District observed:

> [B]oth the Supreme Court and the Ninth Circuit have made clear that the rationale for Eleventh Amendment immunity applies with particular forces to state law claims. See Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1326 (9th Cir. 1991) (dismissing state law claims against state defendants on Eleventh Amendment grounds and stating that "'it is difficult to think of a greater intrusion in state sovereignty that when federal courts instruct state officials on how to conform their conduct to state law'" (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984))).

O.H. v. Oakland Unified Sch. Dist., 2000 WL 33376299 (N.D. Cal. 2000) at *4.

The court concludes that it lacks jurisdiction over Plaintiff's state law claims against Fresno Unified for the same reasons discussed above with regard to Plaintiff's first four claims

11

for relief. Plaintiff's sixth, seventh and eighth claims for relief will therefore be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**IV. Leave to Amend**

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986). Those of Plaintiff's claims that will be dismissed will be dismissed because they have been asserted against a state entity that is immune from suit under the Eleventh Amendment. Obviously, the problem could have been averted had Plaintiff originally sued the individual actors in their individual capacities. The question is therefore whether the court can allow further amendment of the pleadings in order to allege claims against individuals mentioned in the FAC. The court notes that Plaintiff's original complaint sought to sue the individuals mentioned in the original complaint but failed to achieve service of those individuals within the time period allowed by Rule 4 of the Federal Rules of Civil Procedure. The court's June 10 Order noted that even though Plaintiff had been granted additional time beyond that allowed by Rule 4(m) to accomplish service of complaint and summons to the potential individual defendants, there is no indication in the record that the required service of process was accomplished except with respect to Fresno Unified. The court assumes this is why the FAC alleges claims against Fresno Unified only.

The court has given Plaintiff all the opportunity to achieve service on potential individual defendants that it can without severely transgressing the time limits provided by Rule 4(m) and without substantial prejudice to the potential individual defendants. The court finds that further amendment of the complaint for the purpose of alleging claims for relief against the potential individual defendants is not warranted. The court also finds that Plaintiff is not unduly prejudiced by this decision. Plaintiff's Title VI claim captures the essence of what Plaintiff has been trying to allege all along; that he was prevented from being fairly considered for an all

12

sports officiating contract by Defendant Fresno Unified on account of his race. That claim will be vindicated, if at all, through Plaintiff's fifth claim for relief pursuant to Title VI.

The court concludes that Plaintiff's claims for relief numbered one, two, three, four, six, seven and eight will be dismissed without leave to further amend.

THEREFORE, it is hereby ORDERED that Fresno Unified's motion to dismiss is hereby GRANTED with regard to Plaintiff's claims for relief numbered one, two, three, four, six, seven and eight. Those claims are hereby DISMISSED. Fresno Unified's motion to dismiss Plaintiff's fifth claim for relief pursuant to Title VI, 42 U.S.C. § 200d, is hereby DENIED. Leave to amend is DENIED.

IT IS SO ORDERED.

Dated:   September 9, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE