1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMES M. LANIER**, | **1:09 – CV – 1779 AWI SKO** |
| **Plaintiff,** | |
| | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **FRESNO UNIFIED SCHOOL DISTRICT**, | |
| **Defendant.** | **Doc. # 114** |

In this action for damages and injunctive relief, defendant Fresno Unified School District ("Defendant") has filed a motion for summary judgment on the single remaining claim of plaintiff James M. Lanier ("Plaintiff") for violation of Title VI of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Plaintiff, an African-American, alleges his continuing inability to secure an all sports officiating contract form Defendant is the result of Defendant's racially discriminatory contracting practices.  Defendant contends Plaintiff's claim is precluded under the doctrines of *res judicata* and/or collateral estoppel.  Defendant also contends that Plaintiff has failed to provide evidence sufficient to support a prima facie case for discrimination in violation of section 2000d and that Defendant has produced evidence showing Plaintiff was not awarded the 2008 all sports officiating contract for reasons that are entirely lawful.

1   //

2                                **PROCEDURAL HISTORY**

3           The original complaint in this action was filed on October 8, 2009.  The currently-

4   operative First Amended Complaint ("FAC") was filed on July 1, 2011.  On September 29,

5   2011, the court filed a memorandum opinion and order dismissing all claims set forth in the FAC

6   except for Plaintiff's claim for violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §

7   2000d (the "September 29 Order").  Leave to amend any of Plaintiff's dismissed claims was

8   denied.  On March 13, 2013, Defendant moved to amend or supplement its answer to Plaintiff's

9   FAC in order to add defenses of *res judicata* and statute of limitations as to claims by Plaintiff

10  based on denial of sports officiating contracts prior to 2008.  Defendant's motion to amend its

11  answer was granted on May 6, 2013.  Doc. # 93.  The instant motion for summary judgment was

12  filed on September 15, 2013.  Plaintiff filed a "Motion to Defendant's Motion for Summary

13  Judgment" on September 30, 2013, and filed a "Motion for 20-Day Extension of Time to File

14  Opposition" on October 22, 2013.  On December 23, 2013, the court vacated the hearing date for

15  oral argument on Defendant's motion for summary judgment and took the matter under

16  submission.  In that order the court noted that Plaintiff had not submitted any opposition to

17  Defendant's motion as of the date of the order.  The court also noted that Plaintiff had repeatedly

18  expressed financial problems in producing a transcript of a deposition that he apparently

19  considered crucial to his opposition to the motion for summary judgment.  The court therefore

20  informed Plaintiff that it would consider any opposition submitted by Plaintiff prior to January 6,

21  2014.  As of this writing, no opposition has been filed by Plaintiff to Defendant's motion for

22  summary judgment.

23                          **PLAINTIFF'S UNDISPUTED MATERIAL FACTS**

24          Defendant's proffered Undisputed Material Facts ("UMF's") describe first the selection

25  process for the all sports contract in 2008, the year in question for purposes of this action.

26  Defendants follow with a proffer of facts that together serve to allege that, at about the same

27  time as the currently-operative FAC was filed, a parallel case was filed in the Fresno County

28  Superior Court alleging essentially the same claims as were asserted in the FAC.  Defendant

contend that under the doctrine of *res judicata*, Plaintiff's single remaining claim of violation of Title VI of the Civil Rights Act of 1964 is barred because the same claim was adjudicated conclusively against Plaintiff in the Superior Court.  Finally, Defendants proffer a number of undisputed material facts to support their contention that no evidence exists to indicate that the selection process as previously described was influenced by racial bias.

### A.   Facts Proffered to Show Unbiased Selection Process

In or about June 2008, Defendant issued Request for Proposals ("RFP") No. 2840 "announcing that it was putting its 2008-2009 all sports officiating contract out for bid for all of the District's sports for its high schools, middle schools, and elementary schools."  Doc. # 114-2 at ¶2.  Defendant assembled a 10-person panel of District employees, consisting of two African Americans, two Latino, three females, and seven males to vote on the bid proposals for RFP No. 2840.  Doc. # 114-2 at ¶3.  Plaintiff submitted a written bid proposal on behalf of Sports Officiating Association ("SOA") to the District for the 2008-2009 all sports officiating contract. Doc. # 114-2 at ¶4.  The other sports officiating groups submitting bid proposals for the 2008-2009 all sports officiating contract included California Sports Officiating Association ("CSOA"), San Joaquin Valley Officials Association ("SJVOA"), D.A.N. Sports, and California Sports Officials Group.

"On or about June 30, 2008, after a vote of the 10-person panel, COSA received seven first place votes from the panel and had the best ranking of the five contractors bidding for RFP No. 2840."  Doc. # 114-2 at ¶6.  "SOA [Plaintiff's officiating group] received no first place votes and was ranked third by the 10-person panel in the voting for RFP No. 2840."  Doc. # 114-2 at ¶ 7.  Defendant has submitted declarations by each of the 10 members of the selection committee. Each declarant affirms that they had non-discriminatory reasons for voting for SOA for first place and affirms that considerations of race did not enter into the awarding of the 2008-2009 all sports officiating contract.  At the time the 10-member committee made the selection of the sports officiating organization for the 2008-2009 all sports officiating contract, Defendant "had a five-step bid protest procedure in place, which was required to be followed by any contractor intending to protest the results of the bid vote."  Doc. # 114-2 at ¶ 11.  Plaintiff submitted a letter

of protest on or about July 2, 2008.  "Plaintiff abandoned his protest after taking only the first step of the District's bid protest procedure and accepted a 'basketball assignor' position with CSOA."  Doc. # 114-2 at ¶ 13.

Defendant have provided as exhibits the declarations of each of the ten members of the committee involved in the selection of the successful bid for the 2008-2009 all sports officiating contract.  The court has reviewed each of these declarations and finds they each state non-racial reasons for the decisions reflected in the committee members' votes which selected officiating providers other than SOA for first place ranking.

### B. Proffered Undisputed Material Facts Supporting Res Judicata Defense

Plaintiff filed an action in the Fresno County Superior Court within one week of filing his action in this court on October 8, 2009.  The case number for the action in Fresno County Superior Court is 09 CECG 03763 (the "State Action").  The complaint in the State Action was amended three times.  The third amended complaint in the state action was filed on January 20, 2011.  The first cause of action set forth in Plaintiff's State Action is alleged pursuant to 42 U.S.C. § 2000d, and is essentially identical to Plaintiff's sole surviving claim in the federal action in this court.  Plaintiff's third amended complaint in the state action also alleged a claim for violation of California Education Code § 220 et seq.  Defendant allege that "[o]n October 3, 2011, the District filed a Motion for Summary Judgment on the only remaining cause of action for Violation of 42 U.S.C. § 2000d in the State [Third Amended Complaint]."  Doc. # 114-2 at ¶29.  From this, the court infers Plaintiff's state law claim under California Education Code had been dismissed sometime prior to January 20.

Defendant's proffer of undisputed material facts in support of its motion for summary judgment as to Plaintiff's State Action "put at issue all claims for the school years of 2008-2009, 2009-2010, 2010-2011 and 2011-2012."  Doc. # 114-2 at ¶ 30.  The Fresno County Superior Court granted Defendant's motion for summary judgment and entered a take-nothing judgment in favor of Defendant in the State Action on January 19, 2012.  As Defendant notes, the sole remaining claim in Plaintiff's instant federal action is his claim pursuant to 42 U.S.C. § 2000d.

1

2

**LEGAL STANDARD**

3

Summary judgment is appropriate when it is demonstrated that there exists no genuine

4

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

5

Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

6

Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

7

(9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th

8

Cir. 1984).

9

10

11

12

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a genuine
> issue of material fact.

13

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary

14

judgment always has the initial responsibility of informing the court of the basis for its motion,

15

the nature of the responsibility varies "depending on whether the legal issues are ones on which

16

the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532

17

F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of

18

persuasion at trial – usually but not always the defendant – "has both the initial burden of

19

production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan

20

Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In

21

order to carry its burden of production, the moving party must either produce evidence negating

22

an essential element of the nonmoving party's claim or defense or show that the nonmoving

23

party does not have enough evidence of an essential element to carry its ultimate burden of

24

persuasion at trial."  Id.

25

If the moving party meets its initial responsibility, the burden then shifts to the opposing

26

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

27

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v.

28

Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276,

1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be

1   drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

2   810 F.2d 898, 902 (9th Cir. 1987).

3                                    **DISCUSSION**

4          Title VI provides that "[n]o person in the United States shall, on the ground of race,

5   color, or national origin, be excluded from participation in, be denied the benefits of, or be

6   subjected to discrimination under any program or activity receiving Federal financial

7   assistance."  42 U.S.C. § 2000d.  To prevail on a disparate treatment claim under Title VI, a

8   plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives

9   rise to an inference of unlawful discrimination."  Cordova v. State Farm Ins. Co., 124 F.3d 1145,

10  1148 (9th Cir.1997).  Title VI claims are analyzed under the same test as Title VII employment

11  discrimination claims.  Darensburg v. Metropolitan Transp. Com'n, 636 F.3d 511, 519 (9th

12  Cir.2011) ("We look to Title VII disparate impact analysis in analyzing Title VI claims.").

13         Under Title VII, a plaintiff can either establish a prima facie case under the burden-

14  shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or "simply

15  produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely

16  than not motivated" the adverse action.  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th

17  Cir.2004).  When the evidence is direct, little evidence is needed to survive summary judgment.

18  Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1284 (9th Cir.2001).  But

19  when the plaintiff relies on circumstantial evidence, that evidence must be "specific" and

20  "substantial" to defeat a summary judgment motion.  Id.

21         In the context of hiring, the Supreme Court's decision in McDonnell Douglas formulated

22  the standard for a prima facie case as: "(i) [the plaintiff] belongs to a racial minority; (ii) [. . .] he

23  applied and was qualified for a job for which the employer was seeking applicants; and (iii) [. . .]

24  after his rejection the position remained open and the employer continued to seek applicants

25  from persons of [the plaintiff's] qualifications.  411 U.S. at 802.  If the plaintiff establishes a

26  prima facie case, the burden of production, but not persuasion, shifts to the defendant to

27  articulate some legitimate, nondiscriminatory reason for the challenged action.  EEOC v. Boeing

28  Co., 577 F.3d 1044, 1049 (9th Cir.2009).  If the defendant meets this burden, the plaintiff must

                                           **-7-**

then show a triable issue of material fact as to whether the defendant's stated reason is "mere pretext for unlawful discrimination." <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1155 (9th Cir.2010).  If the defendant does so, the plaintiff must then show that the articulated reason is pretextual, by presenting direct or circumstantial evidence. <u>Id.</u>

In its September 29 Order, the court determined that the allegations set forth in the FAC stated a claim for relief for violation of 42 U.S.C. § 2000d sufficient to withstand Defendant's motion to dismiss.  However, the showing necessary to maintain this action in light of Defendant's motion for summary judgment is considerably more than the allegations set forth in the FAC.  The court has reviewed Plaintiff's FAC and notes that the allegations set forth there are, if stripped of the labels "Black" and "White," merely allegations of a selection process that was influenced, perhaps unduly, by insider knowledge and by personal familiarity with the decision making process and perhaps with the persons involved in the decision making process. At this point in the proceedings more is required than the mere labeling of the racial or ethnic identities of the various parties in order to support a prima facie case of discrimination.

The three-element standard for a prima facie set forth in <u>McDonnell Douglas</u> is not intended to be rigidly applied, 411 U.S. at 802.  In addition, it may be argued that the context in the <u>McDonnell Douglas</u> -- that of the plaintiff who is seeking employment -- is sufficiently different from the present context of Plaintiff as contract bidder to require some adjustment to the <u>McDonnell Douglas</u> factors.  However, the factors set forth in McDonnell Douglas are at least illustrative of the general rule that facts offered in the establishment of a prima facie case of discrimination must be sufficient to fairly permit the inference that race or ethnicity was the reason behind the plaintiff's adverse experience.  See <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination").  The third of the <u>McDonnell Douglas</u> factors – the non-filling of the job vacancy upon the rejection of a qualified member of a minority race – permits that critical inference while the mere filling of a

job vacancy with a non-minority candidate among other candidates considered in not sufficient without additional facts to show racial bias.

The court has diligently combed the factual allegations of Plaintiff's FAC and cannot find any fact or set of facts that is sufficient to fairly allow for the inference that Plaintiff's lack of success in bidding for the all sports officiating contract in 2008 was due to reasons of race and not to reasons of personal favoritism or insider information or other non-race related reason.  In this regard, it is important to keep in mind that the provisions of 42 U.S.C. § 2000d are not intended to protect applicants from all forms of bias; it protects only against those forms of bias that are prohibited by the Fourteenth Amendment.  See Regents of the University of California v. Baake, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment").  Thus there is no protection under section 2000d for bias arising from nepotism, personal preference, familiarity or friendship or "insider knowledge,"  however unadvisable those forms of bias may be.  The plaintiff in a section 2000d action has the burden to show that the bias he experienced was based more likely than not on protected classifications such as race or ethnicity as opposed to other plausible yet non-prohibited reasons.  The court has considered the matter carefully and finds that Plaintiff in this action has failed to make the showing required to establish a prima facie case of racial or ethnic bias in violation of section 2000d.

Even if Plaintiff had presented additional facts allowing for the initial inference of impermissible racial bias, Defendants have submitted declarations from each of the ten members of the selection committee, each of which set forth legal and non-racially related reasons for not placing Plaintiff's in first or second place among the competing organizations.  See Exhibits "M," "N," "O," "P," "Q," "R," "S." "T," "U," and "V," of Declaration of Christopher Duran, Docket Number 116.  In light of the declarations of each of the voting members of the selection committee, each setting forth a non-discriminatory reason for the declarant's decision, Plaintiff would be required to offer admissible evidence that the information offered by the declarants as to their reasons for not selecting Plaintiff's organization is pretextual.  No such offer of proof has been made.

On the instances where Plaintiff has sought to delay the court's consideration of Defendant's motion for summary judgment, he has mentioned the need to obtain a copy of the transcript of "my deposition."  The court is not clear whether the document Plaintiff is referring to is a transcript of a deposition of Plaintiff or a transcript of someone else's deposition that was conducted by Plaintiff.  The court also is without any information pertaining to the content of the document other than Plaintiff's allegation that it was relevant to show the racially biased nature of Defendant's decision.  Defendant has included several pages of a deposition taken of Plaintiff on December 6, 2010, to support Defendant's contention that the reasons for Defendant's refusal to award the 2008 all sports officiating contract to Plaintiff had nothing to do with Plaintiff's race.  See Exhibit "I" attached to Declaration of Christopher Duran at Tab 7 of Document 118.  Of some significance, Plaintiff was asked the following question during his deposition:  "Have any of the individuals that you have named in your lawsuit against the district ever communicated anything to you verbally or in writing reflecting an intent to discriminate against you based on your race?"  Plaintiff answered:  "Reflecting an intent, no."  Page 84:22 to 85:2 of Exhibit "I".

So far as the court can determine from the information before it, Plaintiff's allegation of racial bias in violation of 42 U.S.C. § 2000d is based on the fact that Plaintiff is African-American and a committee of mostly non-African Americans awarded the 2008 all sports officiating contract to an officiating organization run by a non-African American who, in Plaintiff's estimation is/was not as qualified as Plaintiff and his officiating organization.  As noted above, these facts and allegations are insufficient to raise an inference of prohibited racial bias.

Because the court has determined that Defendant is entitled to summary judgment on the merits, the court will not make any determination as to whether the doctrine of res judicata would otherwise bar Plaintiff's action.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendant's motion for summary judgment is hereby GRANTED.  The clerk of the court shall ENTER JUDGMENT in favor of Defendant as to all claims asserted in Plaintiff's First Amended Complaint.  The clerk of the court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated:   January 29, 2014                        _____

                                                SENIOR  DISTRICT  JUDGE